IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRANDY W.,[1]

        Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

CIVIL ACTION

No. 18-1074-JWL

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits pursuant to sections 1602 and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) failure to apply the correct legal standard at step two of the sequential evaluation process, the court ORDERS that the Commissioner's final decision shall be reversed and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this decision.

---

[1] The court makes all of its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security claimants, it has determined to caption such opinions using only the last initial of the Plaintiff.

## I. Background

Plaintiff argues that the ALJ "failed to properly evaluate and account for [Plaintiff's] conversion disorder." (Pl. Br. 10) (underline omitted).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless,

the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II. Discussion

Plaintiff argues that the ALJ failed to evaluate properly Plaintiff's conversion disorder. (Pl. Br. 10). She argues that he never discussed her conversion disorder at step two of the sequential evaluation process even though the medical evidence establishes the presence of a medically determinable impairment of conversion disorder in this case. Id. at 10-11. Plaintiff discusses the record evidence suggesting conversion disorder and argues that the ALJ should have discussed it at step two and found it is medically determinable in this case. Id. at 11-14. She further argues the evidence also establishes that her conversion disorder is severe within the meaning of the Act, and that its effects should have been considered at the later steps of the evaluation process. Id. at 14-16. Plaintiff acknowledges the ALJ recognized Dr. Athey's opinion that Plaintiff's progressive decline is the result of conversion disorder, but accorded more weight to the Cooperative Disability Investigations (CDI) Unit report which revealed Plaintiff's abilities. Id. at 17. Plaintiff argues this also is erroneous. Id. at 18-20.

The Commissioner argues that the ALJ "Reasonably Accounted for Plaintiff's Mental Impairments by Limiting Her to a Range of Unskilled Work." (Comm'r Br. 7)

4

(bolding omitted). She argues that the RFC limitations assessed "reflected a reasonable assessment of the treatment records, medical opinions, and other evidence, and were consistent with the opinions of two state agency psychologists." (Comm'r Br. 7). She argues that "Plaintiff overstates the evidence" when she attempts to show conversion disorder as a medically determinable impairment, although she acknowledges that Dr. Athley "did conclude that Plaintiff's functioning was consistent with a conversion disorder." Id. at 8. She argues that "at most, only one psychologist … diagnosed [Plaintiff] with a conversion disorder," and that the state agency psychologist, Dr. Fantz,[2] had the benefit of almost the entire record including the CDI report, and concluded "that Plaintiff's history and symptoms were not consistent with a conversion disorder." Id. at 8-9 (quoting R. 105). She argues that the ALJ summarized all of the evidence relevant to the issue of conversion disorder, accorded little weight to Dr. Athey's opinion and significant weight to Dr. Fantz's opinion, gave good reasons for doing so, and accordingly "had a reasonable basis for his step two finding." Id. at 9. She argues, "Because the ALJ found that Plaintiff had severe impairments at step two and thus continued with the sequential evaluation process, any such step two error was harmless so long as the functional limitations supported by the record were properly accounted for in the RFC finding." Id. (citing 20 C.F.R. § 416.945(a)(2), and Ray v. Colvin, 657 F. App'x 733, 734 (10th Cir. 2016)). The Commissioner argues, "Because the ALJ considered the

---

[2] In her brief, the Commissioner addresses the state agency psychological consultant as "Dr. Frantz," but his name is Dr. Fantz. (R. 105).

5

relevant evidence, weighed the medical opinions, and reached a reasoned decision supported by the evidence, his conclusions should not be disturbed on appeal." Id. at 11.

In her Reply Brief, Plaintiff reiterates her argument that the ALJ failed to find a medically determinable impairment of conversion disorder, and argues that the Commissioner's argument regarding harmless error at step two "would be appropriate had the ALJ found [Plaintiff]'s conversion disorder to be medically determinable, but not severe," but because he found it not medically determinable he was prohibited from considering any limitations resulting from it in assessing Plaintiff's RFC. (Reply 4) (citing Ireland v. Colvin, 14-1012-JWL, 2014 WL 7185008, at *6 (D. Kan. Dec. 16, 2014) ("Limitations attributed to impairments which are medically determinable but are not severe must be considered at later steps in the evaluation, but limitations attributable to impairments which are not medically determinable must not be considered.") (emphases in original)).

### A. The ALJ's Findings Regarding Conversion Disorder

As Plaintiff points out, the ALJ did not mention conversion disorder in his step two discussion. He found that Plaintiff has severe impairments consisting of a "history of head trauma; headaches; diabetes mellitus type 2; asthma by history; history of cervicalgia; post-concussion syndrome; affective disorder[,] and anxiety disorder." (R. 15) (bolding omitted). He also noted the record referred to a past diagnosis of fibromyalgia and to degenerative changes to Plaintiff's cervical and lumbar spine, id., but found "that the impairments of fibromyalgia, [and] degenerative changes of cervical and lumbar spine do not meet the requirements set forth by the Social Security

6

Administration needed for the determination that these alleged conditions are medically determinable impairments." Id. at 16.

In discussing his RFC assessment, the ALJ recognized Dr. Athey's opinion that Plaintiff "was not malingering, and that her progressive decline is a result of conversion disorder, which is treatable with medication and therapy." Id. at 22. He went on to explain that:

> Although Dr. Athey's assessment was based upon his examination findings, the undersigned has given this opinion little weight, because the undersigned has given more weight to the CDI report, which was completed after this examination. The CDI investigation documented the claimant's ability to shop in stores, make purchases, interact with store personnel, interact with her landlord, establish a non-accredited on-line school for her children and act as the record custodian, as well as use the internet "all day" to play video games. All such activities clearly suggest that the claimant is functioning at a higher level.

(R. 22) (citations omitted).

The ALJ summarized the neuropsychological examination performed by Dr. Durrett in November 2013, noting Dr. Durrett's finding of low effort and invalid responses during testing, that Plaintiff's problems do not align with the usual course of recovery following injuries similar to hers, and that her "'less than forthright approach to test taking' made it difficult to draw any conclusions." Id. at 20 (quoting R. 406). The ALJ also summarized Plaintiff's treatment with Dr. Coleman, noting that in 2009 Dr. Coleman diagnosed Plaintiff with major depression, anxiety disorder, and personality disorder, and opined that work would be a major obstacle. Id. at 21. The ALJ accorded this opinion little weight because it was inconsistent with Dr. Coleman's assessment of Plaintiff's other abilities, and with other mental status exams in the record. Id. He

7

summarized Dr. Coleman's report in September 2014, noting that Dr. Coleman opined Plaintiff "is functioning at the severely impaired level, because of her cognitive and emotional conditions." Id. The ALJ did not explicitly express the weight he accorded this opinion. Finally, the ALJ accorded significant weight to the opinion of the state agency psychological consultant, Dr. Fantz, and adopted Dr. Fantz's opinions regarding Plaintiff's mental abilities, finding them well-explained, well supported by the objective evidence, and consistent with the overall record. (R. 25).

**B.     Analysis**

As Plaintiff points out, the ALJ did not discuss conversion disorder or assess whether it is a medically determinable impairment in this case in his step two discussion or elsewhere in the decision at issue. However, his explicit finding that fibromyalgia and degenerative changes in the spine are not medically determinable impairments in this case demonstrates that he is aware that an impairment must be medically determinable before it may be considered in a Social Security disability case. Moreover, all medically determinable impairments must be considered. 20 C.F.R. §§ 416.908 (2016)[3] (defining an impairment), 416.923 (2016) (explaining that the combined effect of all impairments, even those which are not severe, will be considered throughout the disability determination process), 416.929(b) (2016) (explaining that symptoms may only be considered when they reasonably result from a medically determinable impairment),

---

[3] The court notes that many regulations changed effective March 27, 2017. The decision at issue was decided March 7, 2017. (R. 27). Therefore, the ALJ's decision was based on the regulations in effect on March 7, 2017, and court's review is based on those regulations.

8

416.945a)(2) (explaining that when assessing RFC the Commissioner will consider all medically determinable impairments, even those that are not severe). The Commissioner's argument that the ALJ "had a reasonable basis for his step two finding" (Comm'r Br. 9), is without merit in that the ALJ simply made no finding regarding the medically determinable impairment of conversion disorder.

This reason alone is a failure to apply the correct legal standard sufficient to require remand for the Commissioner to consider and make a finding whether Plaintiff's conversion disorder is a medically determinable impairment and, depending on the answer to that question, to consider it or not to consider it, as appropriate, in making findings at step two and thereafter in the sequential evaluation process.

The Commissioner characterizes Plaintiff's complaint "that the ALJ erred by not finding conversion disorder to be a severe impairment at step two" (Comm'r Br. 8), and argues that any "step two error was harmless." Id. at 9. However, Plaintiff does not argue that the ALJ merely failed to find Plaintiff's conversion disorder severe, but that he failed to find that it was a medically determinable impairment. And, Plaintiff's argument is correct. Nowhere did the ALJ state that conversion disorder is (or is not) a medically determinable impairment in this case. But, that determination is a step two requirement, and because in step two he expressly found fibromyalgia and degenerative changes in the spine are not medically determinable impairments and said nothing about conversion disorder, the court cannot tell how he addressed conversion disorder. And, the ALJ's findings, that Dr. Fantz's opinion and the CDI report are worthy of greater weight than Dr. Athey's opinion, suggest that he may have found (without stating) that conversion

9

disorder is not a medically determinable impairment in this case. In any case, the court may not supply its own post hoc rationalization for the ALJ's decision when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).

As plaintiff argues, the step two error is not harmless, because if the ALJ found conversion disorder is not medically determinable, then he <u>may not</u> consider any alleged limitations resulting from that impairment in assessing Plaintiff's RFC. 20 C.F.R. §§ 416.929(b) (2016) (explaining that symptoms may only be considered when they reasonably result from a medically determinable impairment), 416.945a)(2) (explaining that when assessing RFC the Commissioner will consider all medically determinable impairments, even those that are not severe). But, if the ALJ found conversion disorder is medically determinable, he <u>must</u> consider all limitations resulting from it in assessing RFC. Id.; see also, Rutherford v. Barnhart, 399 F.3d 546, 554, n. 7 (3d Cir. 2005) (to be considered, an impairment must be medically determinable, but need not be "severe"); Gibbons v. Barnhart, 85 F. App'x 88, 91 (10th Cir. 2003) ("ALJ must consider only limitations and restrictions attributable to medically determinable impairments.").

The Commissioner also argues, "Because the ALJ considered the relevant evidence, weighed the medical opinions, and reached a reasoned decision supported by the evidence, his conclusions should not be disturbed on appeal." (Comm'r Br. 11). The court is aware that it is the ALJ's responsibility, not the court's, to weigh the evidence, to resolve conflicts in the evidence, to assess RFC based on all of the record evidence, and to make the disability determination. Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir.

2004) ("the ALJ, not a physician, is charged with determining a claimant's RFC"); McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) ("RFC assessment is an administrative, rather than a medical determination.") (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)); Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999) (Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ."); 20 C.F.R. §§ 416.927(e)(2), 416.945, 416.946 (2016).

However, the ALJ is required to apply the correct legal standard in his determination. E.g., Lax, 489 F.3d at 1084; White, 287 F.3d at 905. He did not do so here. Therefore, if the court accepted the Commissioner's argument, it would have to determine whether conversion disorder is a medically determinable impairment in the circumstances of this case, and further determine whether the ALJ's findings at subsequent steps in the sequential evaluation process are consistent with the court's step two determination. That it may not do. This case must be remanded for the Commissioner to apply the correct legal standard.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated December 14, 2018, at Kansas City, Kansas.

s:/ John W. Lungstrum  
**John W. Lungstrum**  
**United States District Judge**